**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

EMMA MERCADO,                                    Case No.


                             Plaintiff,            **COMPLAINT**

    -against-
                                                  **Jury Trial Demanded**
EMUNAH MANAGEMENT CORP, HK
PROPERTY GROUP LLC, UPTOWN BRONX,
LLC, ANTHONY AVENUE INC., MOUNT
ROYAL GROUP LLC, 386 E 184 ST LLC,
and HAROLD KLEIN

                         Defendants.
-------------------------------------------------------------X

       Plaintiff Emma Mercado ("Mercado" or "Plaintiff"), by her attorneys, Akin Law Group,

PLLC, alleges against Defendants Emunah Management Corp ("Emunah"), HK Property Group

LLC ("HK"), Uptown Bronx, LLC ("Uptown"), Anthony Avenue Inc. ("Anthony"), Mount Royal

Group LLC ("Mount Royal"), 386 E 184 ST LLC ("386") (collectively, "Corporate Defendants")

and Harold Klein ("Klein") (Corporate Defendants and Klein, collectively, "Defendants"), upon

information and belief, as follows:

## NATURE OF THE CLAIMS

1.   The Corporate Defendants own, operate, and/or control residential, multi-unit dwellings

     throughout the New York City metropolitan area, available for rent to the public. Each

     Corporate Defendant provides property management services for the property or properties

     it owns, operates, and/or controls.

2.   Klein is a principal, officer, owner, shareholder and/or manager of the Corporate

     Defendants and, in that capacity, is responsible for the management of the properties

     owned, operated, and/or controlled by the Corporate Defendants.

3. In the course of managing the properties owned, operated, and/or controlled by the Corporate Defendants, Defendants employ individuals responsible for the upkeep and operation of the managed properties, including residential janitors, also known as "superintendents" or "supers", to provide on-site property management.

4. From on or around September 7, 2020 until on or around February 12, 2021, Defendants jointly employed Mercado as a janitor/super.

5. In her capacity as a janitor/super, Plaintiff performed varied manual tasks necessary to maintain the upkeep and operation of the properties managed and owned, operated, and/or controlled by the Corporate Defendants. The tasks performed by Plaintiff during her employment with Defendants included, but were not limited to: cleaning and painting apartments, installing appliances and sheet rock, repairing plumbing, electrical, and heating and cooling systems, and collecting rent from tenants. Defendants also required Plaintiff to purchase materials necessary to perform her job duties and pay for operating and maintenance expenses for the company vehicle, for which she was not reimbursed.

6. Defendants maintained a pattern and practice of failing to pay Plaintiff the minimum wage for all hours worked, the overtime rate of one-and-one half (1 ½) times the regular hourly/applicable minimum wage rate for all hours worked in excess of 40 hours per week, and spread-of-hours pay for each workday her shift or shifts exceeded 10 hours per day.

7. Defendants did not pay Plaintiff at all, despite Plaintiff working over 100 hours per week for Defendants. This payroll scheme is an obvious and willful avoidance of Defendants' obligation to pay minimum and overtime wages, as required under state and federal law.

8. Further, Defendants regularly failed to reimburse Plaintiff for expenses incurred during her employment with Defendants in the course of performing her usual duties and responsibilities and in furtherance of Defendants' business interests.

9. Defendants also failed to furnish to Plaintiff annual wage notices and pay statements completely and accurately reflecting, *inter alia*, hours worked and pay received.

10. Defendants further failed to maintain an accurate record keeping of hours worked and wages paid to Plaintiff.

11. Defendants have systematically and repeatedly ignored the requirements of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., ("FLSA") and the New York Labor Law § 190 *et seq*., ("NYLL"). Plaintiff seeks relief for Defendants' unlawful actions, including compensation for unpaid minimum wages, overtime wages, spread-of-hours pay, liquidated damages, statutory civil damages, pre- and post-judgment interest, compensatory damages, and attorney's fees and costs, pursuant to the FLSA and NYLL.

12. Plaintiff further seeks to recover damages to redress the injuries she suffered as the result of being retaliated against by Defendants for complaining of Defendants' improper pay practices, in violation of NYLL § 215.

13. Plaintiff also brings causes of actions pursuant to the New York State Human Rights Law, Executive Law § 296 *et seq.*, ("NYSHRL") and the Administrative Code of the City of New York § 8-101 *et seq.*, ("NYCHRL") for Defendants' subjection of Plaintiff to a hostile work environment on the basis of her sex/gender, by forcing her to endure sexual harassment.

## JURISDICTION AND VENUE

14. This Court has original federal question jurisdiction under 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b) for causes of action brought under the FLSA (29 U.S.C. § 201 *et seq.,*).

15. This Court has supplemental jurisdiction over the claims brought under New York State law pursuant to 28 U.S.C. § 1367, as the claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution.

16. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391, because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district.

17. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

**Plaintiff Mercado**

18. From in or around June 2019 until in or around November 2020, Mercado resided at 529 Underhill Avenue, Bronx, New York 10473.

19. From or around November 2020 until on or around February 24, 2021, Mercado resided at 906 Bryant Avenue, Bronx, New York 10474.

20. From on or around February 25, 2021 through the present, Mercado resided and continues to reside in New York County, New York.

21. From on or around September 7, 2020 until on or around February 12, 2021, Mercado was an employee of Defendants under all applicable statutes.

22. At all times during her employment with Defendants, Mercado was an employee engaged in commerce or the production of goods for commerce on behalf of Defendants.

23. During her employment with Defendants, Mercado was at all times subordinate to and under the direct supervision of Klein.

**Defendant Emunah**

24. Emunah was and is a domestic business corporation duly organized and existing under the laws of the State of New York.

25. At all times relevant to this action, Emunah was and is a for-profit entity authorized to conduct

business pursuant to the laws of the State of New York.

26. Emunah's principal offices are located at 1449 50th Street, Brooklyn, New York 11219 ("Emunah Headquarters").

27. At all times relevant to this action, Emunah was and is a business or enterprise engaged in interstate commerce.

28. At all times relevant to this action, Emunah has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in produced for commerce by any person.

29. At all times relevant to this action, Emunah owns, operates, and/or controls the property located at 3214 Seymour Avenue, Bronx, New York 10469 ("Seymour Property").

30. At all times relevant to this action, Emunah owns, operates, and/or controls the property located at 4556 Richardson Avenue, Bronx, New York 10470 ("Richardson Property").

31. At all times relevant to this action, Emunah provided property management services for the Seymour Property and Richardson Property.

32. At all times relevant to this action, Klein is the Managing Partner of Emunah.

33. At all times relevant to this action, Emunah operates and controls an enterprise engaged in commerce with an annual gross volume of business done exceeding $500,000.

34. From on or around September 7, 2020 until on or around February 12, 2021, Emunah was an employer of Plaintiff within the meaning of all applicable statutes.

**Defendant HK**

35. HK was and is a domestic limited liability company duly organized and existing under the laws of the State of New York.

36. At all times relevant to this action, HK was and is a for-profit entity authorized to conduct business pursuant to the laws of the State of New York.

37. HK's principal offices are located at Emunah Headquarters.

38. At all times relevant to this action, HK was and is a business or enterprise engaged in interstate commerce.

39. At all times relevant to this action, HK has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in produced for commerce by any person.

40. At all times relevant to this action, HK owns, operates, and/or controls the property located at 906 Bryant Avenue, Bronx, New York 10474 ("Bryant Property").

41. At all times relevant to this action, HK provided property management services for the Bryant Property.

42. At all times relevant to this action, HK operates and controls an enterprise engaged in commerce with an annual gross volume of business done exceeding $500,000.

43. From on or around September 7, 2020 until on or around February 12, 2021, HK was an employer of Plaintiff within the meaning of all applicable statutes.

**Defendant Uptown**

44. Uptown was and is a domestic limited liability company duly organized and existing under the laws of the State of New York.

45. At all times relevant to this action, Uptown was and is a for-profit entity authorized to conduct business pursuant to the laws of the State of New York.

46. Uptown's principal offices are located at 20 West 47th Street, Suite 720, New York, New York 10036.

47. At all times relevant to this action, Uptown was and is a business or enterprise engaged in interstate commerce.

48. At all times relevant to this action, Uptown has employees engaged in commerce or in the

production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in produced for commerce by any person.

49. At all times relevant to this action, Uptown owns, operates, and/or controls the property located at 529 Underhill Avenue, Bronx, New York 10473 ("Underhill Property").

50. At all times relevant to this action, Uptown provided property management services for the Underhill Property.

51. At all times relevant to this action, Uptown operates and controls an enterprise engaged in commerce with an annual gross volume of business done exceeding $500,000.

52. From on or around September 7, 2020 until on or around February 12, 2021, Uptown was an employer of Plaintiff within the meaning of all applicable statutes.

**Defendant Anthony**

53. Anthony was and is a domestic business corporation duly organized and existing under the laws of the State of New York.

54. At all times relevant to this action, Anthony was and is a for-profit entity authorized to conduct business pursuant to the laws of the State of New York.

55. Anthony's principal offices are located at Emunah Headquarters.

56. At all times relevant to this action, Anthony was and is a business or enterprise engaged in interstate commerce.

57. At all times relevant to this action, Anthony has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in produced for commerce by any person.

58. At all times relevant to this action, Anthony owns, operates, and/or controls the property located at 764 East 234th Street, Bronx, New York 10466 ("East 234th Property").

59. At all times relevant to this action, Anthony provided property management services for the East 234th Property.

60. At all times relevant to this action, Anthony operates and controls an enterprise engaged in commerce with an annual gross volume of business done exceeding $500,000.

61. From on or around September 7, 2020 until on or around February 12, 2021, Anthony was an employer of Plaintiff within the meaning of all applicable statutes.

**Defendant Mount Royal**

62. Mount Royal was and is a domestic limited liability company duly organized and existing under the laws of the State of New York.

63. At all times relevant to this action, Mount Royal was and is a for-profit entity authorized to conduct business pursuant to the laws of the State of New York.

64. Mount Royal's principal offices are located at 1434 50th Street, Brooklyn, New York 11219 ("Mount Royal Headquarters").

65. At all times relevant to this action, Mount Royal was and is a business or enterprise engaged in interstate commerce.

66. At all times relevant to this action, Mount Royal has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in produced for commerce by any person.

67. At all times relevant to this action, Mount Royal owns, operates, and/or controls the property located at 1790 Prospect Avenue, Bronx, New York 10457 ("Prospect Property").

68. At all times relevant to this action, Mount Royal provided property management services for the Prospect Property.

69. At all times relevant to this action, Klein is the Managing Partner of Mount Royal.

70. At all times relevant to this action, Mount Royal operates and controls an enterprise engaged in commerce with an annual gross volume of business done exceeding $500,000.

71. From on or around September 7, 2020 until on or around February 12, 2021, Mount Royal was an employer of Plaintiff within the meaning of all applicable statutes.

**Defendant 386**

72. 386 was and is a domestic limited liability company duly organized and existing under the laws of the State of New York.

73. At all times relevant to this action, 386 was and is a for-profit entity authorized to conduct business pursuant to the laws of the State of New York.

74. 386's principal offices are located at 197-40 Jamaica Avenue, PO Box #230272, Hollis, New York 11423.

75. At all times relevant to this action, 386 was and is a business or enterprise engaged in interstate commerce.

76. At all times relevant to this action, 386 has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in produced for commerce by any person.

77. At all times relevant to this action, 386 owns, operates, and/or controls the property located at 386 East 184th Street, Bronx, New York 10458 ("East 184th Property").

78. At all times relevant to this action, 386 provided property management services for the East 184th Property.

79. At all times relevant to this action, 386 operates and controls an enterprise engaged in commerce with an annual gross volume of business done exceeding $500,000.

80. From on or around September 7, 2020 until on or around February 12, 2021, 386 was an employer of Plaintiff within the meaning of all applicable statutes.

**Defendant Klein**

81. Klein, upon information and belief, was and is a resident of the State of New York.

82. At all times relevant to this action, Klein served as a principal, shareholder, officer, owner, and/or manager of Emunah.

83. At all times relevant to this action, Klein served as a principal, shareholder, officer, owner, and/or manager of HK.

84. At all times relevant to this action, Klein served as a principal, shareholder, officer, owner, and/or manager of Uptown.

85. At all times relevant to this action, Klein served as a principal, shareholder, officer, owner, and/or manager of Anthony.

86. At all times relevant to this action, Klein served as a principal, shareholder, officer, owner, and/or manager of Mount Royal.

87. At all times relevant to this action, Klein served as a principal, shareholder, officer, owner, and/or manager of 386.

88. Klein possesses or possessed operational control and policy making authority, an ownership interest, or significant control of the Corporate Defendants.

89. Klein exercised the power and authority to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, and determine terms and conditions of employment of Plaintiff.

90. Employees of the Corporate Defendants could complain to Klein directly regarding any of the terms of their employment, and Klein would have the authority to effect any changes to the quality and terms of their employment.

91. The acts of the Corporate Defendants charged in this Complaint were authorized, directed or

accomplished by Klein individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of the Corporate Defendants.

92. Klein is personally and jointly and severally liable for the violations of the FLSA and NYLL by the Corporate Defendants.

**Joint Employer Relationship**

93. At all times relevant to this action, Defendants were joint employers of Plaintiff.

94. At all times relevant to this action, and as a matter of economic reality, Defendants were employers and/or joint employers of Plaintiff within the meaning of the FLSA and NYLL.

95. Facts that demonstrate that Defendants were Plaintiff's employers include:

   a. Defendants all suffered or permitted Plaintiff to work.

   b. Each of the Defendants acted directly or indirectly in the interest of one another in relation to Plaintiff.

   c. Defendants all simultaneously benefitted from Plaintiff's work.

   d. Defendants each had either functional and/or formal control over the terms and conditions of Plaintiff's work.

   e. Plaintiff performed work integral to each Defendant's operation.

   f. Each Defendant had substantial control over Plaintiff's working conditions and over the unlawful policies and practices alleged herein.

   a. Defendants' operations were interrelated and unified.

   b. Defendants shared a common management and was centrally controlled and/or owned by Defendants.

96. For the duration of Plaintiff's employment with Defendants, Plaintiff performed janitorial/super services for the Seymour Property, Richardson Property, Bryant Property, Underhill Property, East 234th Property, Prospect Property, and East 184th Property.

97. At all times relevant to this action, Emunah was and is the registered managing agent for the Seymour Property and the Richardson Property.

98. At all times relevant to this action, the Seymour Property and the Richardson Property were and are owned, operated, and/or controlled by Emunah.

99. The Building Registration Summary Report, as shown on the New York City Department of Housing Preservation and Development website, lists Emunah as Corporate Owner and Managing Agent, Klein as the Head Officer, Officer, Managing Agent, and Shareholder, and Emunah Headquarters as the address associated with the registered owner and managing agent for the Seymour Property.[1]

100. The Building Registration Summary Report, as shown on the New York City Department of Housing Preservation and Development website, lists Emunah as Corporate Owner and Managing Agent, Klein as the Head Officer, Officer, Managing Agent, and Shareholder, and Emunah Headquarters as the address associated with the registered owner and managing agent for the Richardson Property.[2]

101. At all times relevant to this action, HK was and is the registered managing agent for the Bryant Property.

102. At all times relevant to this action, the Bryant Property was and is owned, operated, and/or controlled by HK.

103. The Building Registration Summary Report, as shown on the New York City Department of Housing Preservation and Development website, lists HK as Corporate Owner and Managing Agent, Klein as the Head Officer, Officer, Managing Agent, and Partner/Member, and Emunah Headquarters as the address associated with the registered

---

[1] https://hpdonline.hpdnyc.org/HPDonline/select_application.aspx, search results retrieved April 26, 2021.
[2] https://hpdonline.hpdnyc.org/HPDonline/select_application.aspx, search results retrieved April 26, 2021.

owner and managing agent for the Bryant Property.[3]

104.     At all times relevant to this action, Uptown was and is the registered managing agent for the Underhill Property.

105.     At all times relevant to this action, the Underhill Property was and is owned, operated, and/or controlled by Uptown.

106.     The Building Registration Summary Report, as shown on the New York City Department of Housing Preservation and Development website, lists Uptown as Corporate Owner and Managing Agent, Klein as the Head Officer, Officer, Managing Agent, and Partner/Member, and Emunah Headquarters as the address associated with the registered owner and managing agent for the Underhill Property.[4]

107.     At all times relevant to this action, Anthony was and is the registered managing agent for the East 234th Property.

108.     At all times relevant to this action, the East 234th Property was and is owned, operated, and/or controlled by Anthony.

109.     The Building Registration Summary Report, as shown on the New York City Department of Housing Preservation and Development website, lists Anthony as Corporate Owner and Managing Agent, Klein as the Head Officer, Officer, Managing Agent, and Shareholder, and Emunah Headquarters as the address associated with the registered owner and managing agent for the East 234th Property.[5]

110.     At all times relevant to this action, Mount Royal was and is the registered managing agent for the Prospect Property.

---

[3] https://hpdonline.hpdnyc.org/HPDonline/select_application.aspx, search results retrieved April 26, 2021.
[4] https://hpdonline.hpdnyc.org/HPDonline/select_application.aspx, search results retrieved April 26, 2021.
[5] https://hpdonline.hpdnyc.org/HPDonline/select_application.aspx, search results retrieved April 26, 2021.

111.    At all times relevant to this action, the Prospect Property was and is owned, operated, and/or controlled by Mount Royal.

112.    The Building Registration Summary Report, as shown on the New York City Department of Housing Preservation and Development website, lists Mount Royal as the most recent Corporate Owner, Klein as the most recent Head Officer and Managing Agent, and Mount Royal Headquarters as the address associated with the registered owner and managing agent for the Prospect Property.[6]

113.    At all times relevant to this action, 386 was and is the registered managing agent for the East 184th Property.

114.    At all times relevant to this action, the East 184th Property was and is owned, operated, and/or controlled by 386.

115.    The Building Registration Summary Report, as shown on the New York City Department of Housing Preservation and Development website, lists 386 as the most recent Corporate Owner, Klein as the most recent Head Officer and Managing Agent, and Mount Royal Headquarters as the address associated with the registered owner and managing agent for the East 184th Property.[7]

116.    As listed on the New York State Department of State website, Emunah, HK, and Anthony each designate Emunah Headquarters as the address to which the Department of State will mail process.[8]

117.    At all times relevant to this action, as a regular condition of Plaintiff's employment with the Corporate Defendants, Klein—in his capacity as principal, shareholder, officer,

---

[6] https://hpdonline.hpdnyc.org/HPDonline/select_application.aspx, search results retrieved April 26, 2021.
[7] https://hpdonline.hpdnyc.org/HPDonline/select_application.aspx, search results retrieved April 26, 2021.
[8] https://appext20.dos.ny.gov/corp_public/corpsearch.entity_search_entry, search results retrieved April 26, 2021.

owner, and/or manager of the Corporate Defendants—directed Plaintiff to perform her janitorial/super duties and responsibilities at the Seymour Property, Richardson Property, Bryant Property, Underhill Property, East 234th Property, Prospect Property, and East 184th Property—the properties controlled by the Corporate Defendants—in furtherance of the operation and for the economic benefit of the Corporate Defendants.

118.    For the duration of her employment with Defendants, at Klein's direction, Plaintiff performed janitorial/super services interchangeably at the listed properties owned by the Corporate Defendants.

119.    The property and Corporate Defendant for whom Plaintiff was performing services at any given time during her employment with Defendants depended solely on which property required Plaintiff's services.

120.    For the duration of her employment, Plaintiff was either dispatched to any of the assigned properties by Klein or—as authorized by Klein—in response to a direct request to Plaintiff from a tenant of any of the assigned properties.

121.    For the duration of her employment with Defendants, Plaintiff resided in a property owned by Klein and one of the corporate Defendants.

122.    In or around June 2019—before Klein acquired an ownership interest in the property or the entity controlling/owning the property—Plaintiff began residing at the Underhill Property.

123.    Plaintiff resided at the Underhill Property until in or around November 2020 when, at Klein's direction, she moved into the Bryant Property.

124.    For the duration of her employment with Defendants, Plaintiff was directed by Klein to perform janitorial services for the properties at which she resided.

125.    Upon information and belief, at all times relevant to this action, the Corporate

Defendants share owners, officers, and/or directors.

126.     On a daily basis, Klein managed the operations of the Corporate Defendants and directed employees of the Corporate Defendants to perform work at and for any of the other Corporate Defendants.

127.     Acting in concert with one another, in furtherance of their mutual and individual interests, Defendants jointly controlled the terms and conditions of Plaintiff's employment, including by interchangeably sharing and calling upon Plaintiff's services at any time during her employment with Defendants, sharing materials purchased and used by Plaintiff in connection with the operation of each Corporate Defendant without specific assignation or allocation of resources or expenses to any single Defendant, and using Plaintiff's labor to further the economic interests of the Corporate Defendants and Klein together.

## FACTUAL ALLEGATIONS

128.     Prior to commencing employment with Defendants, Plaintiff resided at the Underhill Property.

129.     When Plaintiff initially moved into the Underhill Property in or around June 2019, the Underhill Property was not owned by Defendants.

130.     Prior to Defendants' purchase of the Underhill Property, while Plaintiff resided at the Underhill Property, Plaintiff performed janitorial/super services for the owners and/or property managers of the Underhill Property.

131.     As part of the agreement she had with the Underhill Property's prior owners, for the janitorial services she performed for the Underhill Property, Plaintiff would be permitted to live at the property rent-free.

132. On or around September 7, 2020, Klein advised Plaintiff he was the new owner of the Underhill Property. This was the first time she learned Defendants were the owners of the Underhill Property.

133. On or around September 7, 2020, Klein told Plaintiff she owed him rent arrears for the months dating back to (and including) July 2020 at a rate of $1,200 per month and demanded Plaintiff immediately pay rent through November 2020 plus the alleged "rent arrears".

134. The total amount Klein demanded Plaintiff immediately pay him for alleged rent arrears and future rent was $6,000, representing rent from July 2020 through November 2020 at $1,200 per month.

135. Prior to September 7, 2020, neither Defendants nor the prior owners of the Underhill Property advised Plaintiff that she would be charged rent for continuing to reside at the Underhill Property or notified Plaintiff that she was in arrears for alleged past-due rent.

136. Plaintiff told Klein she was of extremely limited means and had no way to pay him the demanded $6,000.

137. Via Zelle, Plaintiff transferred Klein $1,200 as partial payment of the alleged rent arrears.

138. On September 7, 2020, Klein told Plaintiff she could pay down the balance of the alleged rent debt by working as the full-time janitor/super for the Underhill Property and six (6) other properties owned by Klein or by the Corporate Defendants in which Klein has an ownership interest.

139.     Plaintiff asked Klein how she would be paid if she worked as the full-time janitor/super for Defendants, to which Klein responded he would discuss that with Plaintiff once she worked off her alleged rent debt.

140.     During her employment with Defendants, Plaintiff was (and remains) the primary caregiver for her seven (7) year-old disabled daughter.

141.     Terrified she would lose housing for herself and her daughter—especially as she was not able to afford a security deposit or rent elsewhere—on September 7, 2020, Plaintiff agreed to commence employment with Defendants, despite having no prior notice of any alleged debt arrears and her steadfast belief she did not owe Defendants any money.

142.     Trapped between the prospect of homelessness for herself and her daughter or working for Defendants for free, Plaintiff felt she had no choice but to accept the working conditions proffered by Klein, which amounted to indentured servitude.

143.     In her capacity as super/janitor for Defendants, Plaintiff was responsible for, among other duties: traveling between the seven (7) assigned properties managed and owned, operated, and/or controlled by Defendants to address the daily needs of the 50+ tenants residing in the assigned properties, maintaining relationships with the tenants, collecting rent, performing repairs, cleaning and trash removal, and otherwise performing any and all janitorial work necessary to facilitate the operation of Defendants' enterprises.

144.     For the duration of Plaintiff's employment with Defendants, Plaintiff was a non-exempt employee.

145.     At all times during her employment with Defendants, Plaintiff did not report to any regular location but instead reported to whichever of the assigned properties required Plaintiff's attention.

146.     For the duration of her employment with Defendants, Plaintiff was dispatched by Klein to any of the assigned properties as needed.  At times, Plaintiff would herself respond directly to requests from tenants of any of the assigned properties—an arrangement which was endorsed by Klein.

147.     Despite extremely difficult working conditions, Plaintiff was an excellent employee and remains beloved by the tenants of the assigned properties for the care and attention she gave them.

148.     At the commencement of Plaintiff's employment with Defendants, Plaintiff was the lone employee performing janitorial/super services for Defendants.

149.     At Klein's direction, for the duration of her employment with Defendants, Plaintiff was "on call" 24/7.

150.     For the duration of her employment with Defendants, Plaintiff's work day began at 9:00 a.m. and never ended before 10:00 p.m.

151.     Throughout Plaintiff's employment with Defendants, emergencies, such as heat and power outages at Plaintiff's assigned properties, were routine.

152.     As a result, Plaintiff's work day usually ended after midnight and often not until 2:00 a.m.

153.     For the duration of her employment with Defendants, Plaintiff worked an average of approximately 105 hours per week, seven days per week.

154.     For the duration of Plaintiff's employment with Defendants, Defendants never maintained a punch clock, log book, or other contemporaneous recordation of the hours worked by Plaintiff.

155.     **For the duration of her employment with Defendants, Plaintiff was never paid for her work for Defendants**.

156.    In or around October 2020, Defendants provided Plaintiff with access to a company car for Plaintiff to use in the course of performing her janitorial/super duties for Defendants.

157.    From in or around October 2020 until in or around February 2020, Plaintiff used the company car exclusively within the course of performing her job duties and responsibilities for Defendants.

158.    During her employment with Defendants, Plaintiff incurred significant expenses in the course of performing her duties and responsibilities for Defendants for which she was not reimbursed fully or at all.

159.    By way of example, Plaintiff incurred business expenses in the course of performing her job duties, including, but not limited to: payments to a contractor for demolition, garbage removal, and renovations at the Bryant Property, in the amount of **$3,800**; gasoline for the company car in the amount of approximately $20 per week for four months, totaling approximately **$320**; repairs for damage to the (insured) company car while the vehicle was parked (and for which Plaintiff bore no responsibility), totaling **$250**; purchase of three (3) boxes of contractor garbage bags, totaling **$105**; an oil change for the company car in the amount of $89 (for which Klein partially reimbursed Plaintiff by transferring her two payments of $15 each), costing Plaintiff a net outlay of **$59**; and costs of changing a flat tire on the company car, totaling **$25**.

160.    Other than two $15 payments partially reimbursing Plaintiff for the $89 she paid to have the oil changed on the company car, Defendants did not reimburse Plaintiff for the other expenses she incurred in the course of performing her job duties and responsibilities for Defendants and for the exclusive economic benefit of Defendants.

161.    In total, Plaintiff incurred at least **$4,559** in unreimbursed business expenses during her employment with Defendants.

162.     Beginning in or around December 2020 and continuing throughout the remainder of her employment with Defendants, Plaintiff asked Klein on a regular basis—at least once per week—if she had finished working off her alleged rent debt.

163.     Klein responded by telling Plaintiff she still owed him the debt.

164.     Klein never provided Plaintiff an accounting of the alleged debt, how much of the debt she paid down with her labor, or any information as to the rate of interest on this alleged debt or rate and date by which Plaintiff could expect to fully satisfy her debt with her labor.

165.     When Plaintiff asked Klein when her "debt" would be satisfied and Defendants would start paying her a wage, Klein repeatedly brushed Plaintiff off, telling her he would discuss a wage when she was finished paying her "debt".

166.     In or around early December 2020, Plaintiff—in dire need of an income to support herself and her daughter due to Defendants' refusal to pay her—sought and was hired for a part-time job.

167.     Plaintiff was hired to perform work twice per week for Bronx Development Group ("BDG"), operated by Shlomo Denti ("Denti"), an acquaintance of Klein's.

168.     Despite knowing Plaintiff was now working a part-time job twice per week, Klein continued to require Plaintiff to perform all of her regular duties and responsibilities for Defendants, even on the days she was working for BDG.

169.     Throughout Plaintiff's employment with BDG, Klein required Plaintiff to constantly (all day) take and make phone calls for Defendants.

170.     As a result, despite her part-time job at another company, Plaintiff continued to work seven days per week for Defendants.

171.     Denti quickly noticed Plaintiff was spending a substantial amount of time performing work for Defendants while she was supposed to be working for BDG.

172.     Denti told Plaintiff he was tired of sharing her with Klein, and he needed Plaintiff to only perform work for him on the days she was scheduled to work at BDG.

173.     Plaintiff told Klein about her conversation with Denti, but Klein refused to allow Plaintiff to stop working for Defendants while she was at BDG.

174.     Because Klein insisted Plaintiff remained indebted to him and because Plaintiff could not afford to lose her housing—controlled by Defendants—Plaintiff had no choice but to continue to answer Klein's calls and perform work for Defendants at Klein's direction while working at BDG.

175.     In or around the first week of January 2021—only a month after starting at BDG—Denti saw Plaintiff on the phone with Klein while she was working at BDG.

176.     When Denti asked Plaintiff why she was on the phone, Plaintiff told him she had to answer the phone, because Klein was calling her asking her to do work for Defendants.

177.     Denti immediately fired Plaintiff.

178.     Because Klein required Plaintiff to work for Defendants while she was working for BDG, Klein directly caused Plaintiff's termination from BDG.

179.     Plaintiff's termination from BDG resulted in Plaintiff losing her only source of income.

180.     After her termination from BDG, Plaintiff repeatedly asked Klein to be paid for her work for Defendants.

181.     In or around the beginning of February 2021, Plaintiff told Klein she was not going to continue working for Defendants if they did not start paying her.

182.     Plaintiff anticipated Klein would discuss paying her, and she continued to work for Defendants.

183.     On or about February 12, 2021, Plaintiff assisted one of Defendants' tenants with a heat outage.

184.     Throughout her career as a janitor/super, Plaintiff prided herself on her swift response to tenant issues—especially those involving utility outages and other emergency situations. After speaking with the tenant, Plaintiff was surprised to learn the tenant had been without heat for two days in the frigid February weather—an issue that normally would have been brought to Plaintiff's attention immediately.

185.     When Plaintiff asked the tenant why the tenant did not contact her sooner, the tenant responded that Klein told the tenant Plaintiff no longer worked for Defendants, and that Klein had hired a new janitor/super—Gigi.

186.     Plaintiff was surprised and confused by the tenant's comments, because Klein never told Plaintiff she was terminated and because Klein had repeatedly promised to pay Plaintiff a wage once she worked off her "debt".

187.     Plaintiff confronted Klein, asking him why hired a janitor/super—who he was paying—when he had repeatedly promised Plaintiff he was going to start paying her.

188.     Klein told Plaintiff "it [was] complicated," and refused to pay her.

189.     Plaintiff, no longer able to tolerate working without pay, was forced to accept her retaliatory constructive termination from Defendants.

190.     Having complained to Defendants of their failure to pay her the minimum—or any—wage, and Defendants having taken no action to remediate Plaintiff's complaints, no reasonable person in Plaintiff's situation could be expected to continue working for Defendants.

191.     Plaintiff was forced to accept his constructive termination from Defendants in retaliation for Defendants' refusal to remediate their unlawful pay practices after Plaintiff's repeated complaints.

192.     For the duration of her employment with Defendants, Defendants did not pay Plaintiff the applicable minimum wage for all hours worked under the FLSA and NYLL.

193.     For the duration of her employment with Defendants, Defendants did not pay Plaintiff the one-and-one-half (1 ½) overtime premium rate for each hour she worked beyond 40 hours in a week.

194.     For the duration of her employment with Defendants, Defendants did not pay Plaintiff an additional hour of pay at the minimum wage for each day her shift work exceeded 10 hours.

195.     For the duration of her employment with Defendants, Defendants failed to keep accurate records of wages earned or hours worked by Plaintiff.

196.     For the duration of Plaintiff's employment with Defendants, Defendants failed to furnish Plaintiff with an accurate and complete statement with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

197.     For the duration of her employment with Defendants, Defendants did not provide Plaintiff with a wage notice setting forth her rate of pay, exempt status, overtime rate, method of compensation, regular payday, names of her employers (including fictitious

names), addresses and phone numbers for her employers' main offices or principal

locations, or any allowances taken.

198.    Defendants' violations of the FLSA and NYLL as relating to Plaintiff's

employment with Defendants have been willful.

199.    In addition to Defendants' wage and hour violations, Defendants subjected Plaintiff

to a hostile work environment on the basis of her gender/sex.

200.    For the duration of Plaintiff's employment with Defendants, Klein was Plaintiff's

direct supervisor.

201.    In his capacity as Plaintiff's direct supervisor, Klein possessed and exercised the

authority from Defendants to set the method and rate of Plaintiff's compensation, hire/fire

Plaintiff, determine Plaintiff's schedule, assign her duties and responsibilities, direct her

performance of duties, evaluate her performance, and otherwise control the terms and

conditions of her employment with Defendants.

202.    In the course of Plaintiff's employment with Defendants, Klein subjected Plaintiff

to sexual harassment by making outrageous and offensive comments to Plaintiff throughout

her employment with Defendants.

203.    Throughout her employment with Defendants, on a regular basis, Klein pried into

Plaintiff's personal life.

204.    By way of example, Klein said to Plaintiff, "Did you fuck [Plaintiff's previous

boss]?  You can tell me!"

205.    By way of further example, whenever Klein saw Plaintiff walking with a man, Klein

asked Plaintiff if the man was her boyfriend.

206. On multiple occasions when Plaintiff complained to Klein that she needed to be paid to take care of herself and her daughter, Klein said, "Why don't you tell your boyfriend to help you," and asked, "Why doesn't your boyfriend take care of that?"

207. Plaintiff was disgusted and offended by Klein's harassing and discriminatory comments.

208. As a result of Klein's discriminatory comments, Plaintiff felt extremely uncomfortable.

209. Because Plaintiff was Defendants' only employee other than Klein, and Klein was Plaintiff's direct supervisor, Plaintiff was forced to continue working under Klein's supervision for the duration of her employment with Defendants.

210. As a result of Klein's discriminatory and offensive sexually harassing comments to which Klein subjected Plaintiff, the conditions of Plaintiff's employment with Defendants were altered.

211. Throughout her employment with Defendants, Defendants treated Plaintiff less well because of her gender/sex.

212. Defendants unlawfully sexually harassed and discriminated against Plaintiff.

213. Defendants maintained a policy, practice, and procedure of discrimination.

214. During Plaintiff's employment with Defendants, Plaintiff was and continued to be regularly exposed to a discriminatory, offensive, and hostile work environment.

215. At all times relevant to this action, Plaintiff was distressed, outraged, and offended by Klein's discriminatory and harassing conduct.

216. Klein engaged in the aforementioned conduct while acting in his capacity as Plaintiff's supervisor in the course of her employment with Defendants.

217. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

218. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff felt extremely humiliated, degraded, victimized and embarrassed.

219. As a result of Defendants' unlawful employment practices, Plaintiff suffered and continues to suffer from severe emotional distress.

220. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

221. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

222. As Defendants conduct has been willful, reckless, outrageous, intentional, and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the jurisdictional limits of all lower Courts.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Unpaid Minimum Wage

223. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

224. Defendants were required to pay Plaintiff the applicable federal minimum wage rate.

225. Defendants failed to pay Plaintiff the minimum wages to which she is entitled under the FLSA.

226. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

227.     Defendants' violations of the FLSA described above have been willful, and therefore, a three year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

228.     As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover from Defendants her unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**New York Labor Law – Unpaid Minimum Wage**

229.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

230.     Defendants failed to pay Plaintiff the minimum wages to which she is entitled under the NYLL.

231.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff minimum hourly wages.

232.     As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants her unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq*.

**THIRD CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Overtime**

233.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

234.     Defendants are employers within the meaning of 29 U.S.C §§ 203(e) and 206(a), and employed Plaintiff.

235.     Defendants were required to pay Plaintiff one and one-half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours worked in excess of 40 hours in a workweek.

236.     Defendants failed to pay Plaintiff the overtime wages to which she is entitled under the FLSA.

237.     Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff overtime wages.

238.     Defendants' violations of the FLSA described above have been willful, and therefore, a three year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

239.     As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover from Defendants her unpaid overtime wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

## FOURTH CAUSE OF ACTION
### New York Labor Law – Unpaid Overtime

240.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

241.     Under the NYLL and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiff one and one half (1 ½) times the regular rate of pay/applicable minimum wage rate for all hours she worked in excess of forty.

242.     Defendants failed to pay Plaintiff the overtime wages to which she is entitled under the NYLL.

243.     Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff overtime wages.

244.     As a result of Defendants willful violations of the NYLL, Plaintiff is entitled to recover her unpaid overtime wages, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq.*

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Unpaid Spread-of-Hours**

245.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

246.     Defendants have willfully failed to pay Plaintiff additional compensation of one hour's pay at the minimum hourly wage rate in all instances where Plaintiff worked either a split shift or more than 10 hours per day, in violation of the NYLL §§ 650, *et seq.* and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. Tit. 12 §§, 137-1.7 (2010), 146-1.6 (2012).

247.     As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover unpaid spread-of-hours compensation, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to the NYLL.

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Wage Theft Prevention Act**

248.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

249.     Defendants violated NYLL § 195(1) by failing to furnish Plaintiff and the Rule 23 Class, at the time of hiring and on or before February 1st of each subsequent year of employment (when applicable), with a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designed by the employer in accordance with NYLL § 191; the name of the employer;

any "doing business as" names used by the employer; the physical address of the employer's main office of principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

250.     Due to Defendants' violations of NYLL§ 195(1), Plaintiff is entitled to statutory penalties of $50.00 for each workday that Defendants failed to provide wage notices, up to a maximum of $5,000 each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided by NYLL § 198(1-b)

251.     Defendants violated NYLL § 195(3) by failing to furnish Plaintiff with each payment of wages and accurate statement listing the dates of work covered by that payment or wages; name of employee; name of employer; address and phone number of employer; rate of rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages, deductions, allowances, if any, claimed as part of the minimum wage; and net wages.

252.     Through their failure to provide Plaintiff with wage statements as required by the NYLL, Defendants have violated NYLL § 190, *et seq*., and the supporting New York State Department of Labor Regulations.

253.     Due to Defendants' violation of NYLL § 195(3), Plaintiff is entitled to statutory penalties of $250.00 for each workweek that Defendants failed to provide her with accurate wage statements, or a total of $5,000, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL § 198(1-d).

## SEVENTH CAUSE OF ACTION
### New York Labor Law – Recording Keeping Violations

254.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

255.     At all times relevant to this action, Defendants were and are required to establish, maintain and preserve for not less than six years, weekly payroll records that show for each employee, among other information, true and accurate payroll records and the number of hours worked daily and weekly, including the time of arrival and departure of each employee. NYLL § 195(4); 12 N.Y.C.R.R. § 142-2.6.

256.     Defendants violated the applicable NYLL and NYCRR provisions by, *inter alia*, not maintaining and preserving Plaintiff's time of the commencement of and cessation of work performed for Defendants.

### EIGHTH CAUSE OF ACTION
### Fair Labor Standards Act – Retaliation

257.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

258.     Plaintiff was an employee of Defendants within the meaning of the FLSA.

259.     Defendants were employers of Plaintiff within the meaning of the FLSA.

260.     29 U.S.C. § 215(a)(3) prohibits any person, "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

261.     While employed by Defendants, Plaintiff complained to Defendant about Defendants' unlawful employment practices, including Defendants' failure to pay Plaintiff the minimum wage.

262.     Plaintiff's complaints constitute protected activity under the FLSA.

263. As a result of Plaintiff's complaints, Defendants continued to refuse to pay Plaintiff the minimum wage and ultimately forced Plaintiff to accept her constructive termination.

264. A causal connection exists between Plaintiff's complaints of Defendants' unlawful failure to pay the minimum wage and Defendants' continued failure to pay Plaintiff the minimum wage, as well as Plaintiff's forced acceptance of her constructive termination.

265. Defendants violated 29 U.S.C. § 215(a)(3) by continuing to fail to pay Plaintiff the minimum wage and by forcing Plaintiff to accept her constructive termination, in retaliation for Plaintiff's complaints of Defendants' unlawful pay practices.

266. Plaintiff is entitled to recover from Defendants lost wages and other compensatory damages, in addition to reasonable attorneys' fees, costs, declaratory and injunctive relief, as a result of Defendants' retaliatory conduct.

## NINTH CAUSE OF ACTION
### New York Labor Law – Retaliation

267. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

268. Plaintiff was an employee of Defendants within the meaning of the NYLL.

269. Defendants are employers within the meaning of the NYLL.

270. NYLL § 215(1) states, in part, "No employer or his or her agent, or the officer of agent of any corporation, partnership, or limited liability company…shall discharge, threaten, penalize or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer…or his or her authorized representative…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter…[or] (iii) because such employee has caused to be instituted or is about to institute a proceeding

under or related to this chapter…or (v) because such employee has otherwise exercised rights protected under this chapter…"

271.     While employed by the Defendants, Plaintiff complained to the Defendants about Defendants' unlawful practices, policies and procedures of not being paid proper wages and not timely tendering his wages.

272.     Plaintiff's complaints to Defendants constitute protected activity under NYLL § 215.

273.     A causal connection exists between Plaintiff's complaints of Defendants' improper pay practices and Defendants' decision to continue to fail to pay Plaintiff, forcing Plaintiff to accept her constructive termination.

274.     Defendants violated NYLL § 215 by retaliating against Plaintiff by continuing to fail to pay Plaintiff minimum wage, as well as forcing Plaintiff to accept her constructive termination, due to Plaintiff's complaints about Defendants' unlawful pay practices, policies, and procedures.

275.     Plaintiff is entitled to recover from Defendants lost wages and other compensatory damages and statutory penalties, in addition to reasonable attorneys' fees, costs, declaratory and injunctive relief, as a result of Defendants' retaliatory conduct.

**TENTH CAUSE OF ACTION**
**New York State Human Rights Law – Hostile Work Environment**

276.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

277.     Executive Law § 296 provides that it shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed**,** color, national origin**,** sexual orientation**,** military status, **<u>sex</u>**, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to

discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

278.    By the actions described above, among others, Defendants have discriminated against Plaintiff and created a hostile work environment because of her gender/sex, in violation of New York State Executive Law.

279.    That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## ELEVENTH CAUSE OF ACTION
### New York City Human Rights Law – Hostile Work Environment

280.    Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

281.    The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice:  "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

282.    By the actions described above, among others, Defendants have discriminated against Plaintiff and created a hostile work environment because of her gender/sex, in violation of New York City Administrative Code.

283.    That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A. A declaratory judgment that the practices complained of herein are unlawful under applicable state and federal law;

B. Declaring that Defendants have violated the minimum wage provisions of the FLSA, NYLL and supporting New York State Department of Labor Regulations;

C. Declaring that Defendants violated the overtime provisions of the FLSA, NYLL and supporting New York State Department of Labor Regulations;

D. Declaring that Defendants violated the spread-of-hours pay provisions of the NYLL and New York State Department of Labor Regulations;

E. Declaring that Defendants violated the notice provisions of the NYLL and Wage Theft Prevention Act;

F. Declaring that the Defendants continued to fail to pay Plaintiff the minimum wage and forced Plaintiff to accept her constructive termination due to Plaintiff's complaints of Defendants' unlawful pay practices, policies and procedures and awarding Plaintiff a recovery for damages sustained;

G. Enjoining future violations of the FLSA and NYLL by Defendants;

H. Declaring that Defendants' violations of the FLSA and NYLL were willful;

I. Awarding Plaintiff unpaid minimum wages;

J. Awarding Plaintiff unpaid overtime wages;

K. Awarding Plaintiff unpaid spread-of hours compensation;

L. Awarding Plaintiff statutory penalties for Defendants' failure to furnish wage notices and/or complete and accurate wage statements pursuant to the NYLL.

M. Awarding Plaintiff liquidated and/or punitive damages in amount equal to the total amount of wages found to be due, pursuant to the FLSA and NYLL;

N. Awarding damages to the Plaintiff, retroactive to the date of her constructive termination, for all lost wages and benefits resulting from the Defendants' unlawful employment practices in an amount that exceeds the jurisdictional limit of all lower courts;

O. Declaring that the Defendants engaged in unlawful employment practices prohibited by federal and state common law, New York State Executive Law §296 *et seq.*, and the New York City Administrative Code Title 8, §8-107 *et seq.*;

P. Declaring and that the Defendants' subjected Plaintiff to a hostile work environment on the basis of her sex/gender and awarding Plaintiff a recovery for damages sustained;

Q. Awarding damages to Plaintiff, retroactive to the date any such damages were initially incurred, for all lost wages, pay, and benefits resulting from Defendants' unlawful employment practices in an amount that exceeds the jurisdictional limit of all lower courts;

R. Awarding Plaintiff compensatory damages for mental and emotional injuries in an amount that exceeds the jurisdictional limit of all lower courts;

S. Directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' unlawful conduct and making the Plaintiff whole for all earnings and other benefits she would have received but for Defendants' discriminatory treatment, including, but not limited to, title, seniority status, wages and other lost benefits;

T. Awarding Plaintiff pre-judgment and post-judgment interest;

U. Awarding Plaintiff punitive damages;

R. Awarding Plaintiff attorney's fees, costs and expenses; and

S. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated:  May 3, 2021
     New York, New York

**AKIN LAW GROUP PLLC**

*/s/ Justin Ames*
_____
Justin Ames, Esq.
45 Broadway, Suite 1420
New York, NY 10006
Telephone: (212) 825-1400
*Attorneys for Plaintiff*